**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Metropolitan Area Agency on Aging, Inc.,                    Civil No. 24-1854 (DWF/SGE)

Plaintiff/Counter Defendant,

**MEMORANDUM**
v.                                                                          **OPINION AND ORDER**

Trellis Co.,

Defendant/Counter Claimant.

## INTRODUCTION

This matter is before the Court on four motions:  Plaintiff/Counter Defendant

Metropolitan Area Agency on Aging, Inc.'s second motion for summary judgment (Doc.

No. 95) and Defendant/Counter Claimant Trellis Co.'s motion for bench trial and to strike

the jury demand (Doc. No. 83), motion to exclude the expert testimony of Theodore H.

Davis, Jr. (Doc. No. 104), and motion for summary judgment (Doc. No. 110).  For the

reasons set forth below, the Court grants summary judgment in favor of Defendant and

denies Defendant's other motions as moot.

## BACKGROUND

This dispute involves two non-profit organizations that operate primarily in the

Minneapolis-St. Paul metropolitan area.  (Doc. No. 119 ¶¶ 5-6; Doc. No. 121-7 at 6, 24.)

Plaintiff provides social services to seniors and their caregivers.  (Doc. No. 101-3 at 8.)

Those services include home-delivered meals, transportation, legal services, chore

services, and counseling on housing options.  (Doc. No. 121-8 at 10, 14.)  Defendant is a

property developer that focuses on creating affordable housing for low-income populations, including seniors, veterans, and people with disabilities.  (Doc. No. 119 ¶ 5.)  Defendant owns more than sixty properties in the Minneapolis-St. Paul metropolitan area and greater Minnesota.  (*Id.* ¶ 6.)  Most of those properties are managed by Defendant's wholly owned subsidiary Trellis Management Co. ("Trellis Management").  (*Id.* ¶¶ 1, 6.)  Independent of each other, both Plaintiff and Defendant engaged in company rebranding work in and around 2018 and 2019.  (*See* Doc. No. 101-3 at 2; Doc. No. 114 ¶¶ 2-3; Doc. No. 121-4 at 19.)  Following that process, each party decided to rebrand using the brand name "Trellis."  (*See* Doc. No. 102 at 3-4; Doc. No. 114 ¶¶ 2-3.)

On August 12, 2020, Defendant rolled out its use of the Trellis name and its new logo at a companywide virtual picnic.  At or around that time, Defendant took several other rebranding steps:  Defendant contracted with a company to install new logo decals on the Trellis Management doors, Defendant's Site Managers sent notices to their tenants about the brand change, Defendant's CEO sent notices about the brand change to business partners, Defendant changed its website to its new brand, and Defendant sent Trellis-branded clothing to its on-site employees to wear while performing their job duties.  (Doc. No. 112-1; Doc. No. 113 ¶¶ 11-12, 14-15; Doc. No. 113-5; Doc. No. 114 ¶¶ 5-6; Doc. No. 114-3; Doc. No. 116 ¶ 6; Doc. No. 117 ¶¶ 6, 8; Doc. No. 119 ¶¶ 6, 10; Doc. No. 119-1.)  After August 12, 2020, Defendant began using the Trellis name in new property development deals, Defendant's employees regularly wore Trellis-branded clothing when working at Defendant's properties, Defendant's Site Managers used the Trellis mark on other notices sent to tenants, and Defendant's employees gave new and

2

prospective tenants Trellis-branded materials.  (Doc. No. 112-2; Doc. No. 113 ¶¶ 11-13; Doc. No. 113-2 at 6-7; Doc. No. 116 ¶ 6; Doc. No. 117 ¶ 6; Doc. No. 119 ¶¶ 18-19; Doc. No. 120.)  Defendant never filed an intent-to-use application with the U.S. Patent and Trademark Office (the "PTO") for the Trellis word mark or its Trellis design mark.

Seventy-six days later, on October 27, 2020,[1] Plaintiff filed an application to register the Trellis word mark with the PTO.[2]  (Doc. No. 121-15.)  Defendant opposed Plaintiff's application at the Trademark Trial and Appeal Board ("TTAB") on grounds of priority and likelihood of confusion (the "TTAB Action").  (Doc. No. 22-2.)  After some discovery, the parties moved for partial summary judgment in the TTAB Action.  (Doc. No. 36, Ex. A ("TTAB Order") at 4.)  While waiting for a decision in the TTAB Action, Plaintiff filed this case seeking a declaratory judgment of priority (Count 1) and a declaratory judgment of non-infringement (Count 2).  (Doc. No. 1 ¶¶ 27-37.)  Defendant subsequently moved to dismiss or, alternatively, stay this case pending final judgment in the TTAB Action.  (Doc. No. 12.)  In response, Plaintiff moved for early summary judgment in this case.  (Doc. No. 19.)  While those two motions were pending, TTAB denied the parties' cross-motions for partial summary judgment and suspended the TTAB Action pending final disposition in this case.  (TTAB Order at 12-14.)

---

[1]     Previously, Defendant disputed this priority date because Plaintiff later amended the date to March 16, 2021.  Defendant still disputes the October 2020 date.  (*See* Doc. No. 130 at 20 n.3.)  The Court need not address this dispute because no reasonable factfinder could find that Defendant did not establish priority before October 27, 2020.

[2]     Plaintiff also filed an application to register a design mark featuring the word Trellis on September 6, 2022.  (Doc. No. 121-27.)

On December 18, 2024, the Court denied Plaintiff's motion for summary judgment and largely denied Defendant's motion to dismiss or stay.  (Doc. No. 45.)  Notably, the Court found that Defendant had "presented enough evidence to demonstrate a genuine issue of material fact exists concerning priority."  (*Id.* at 13.)  Following that ruling, Defendant filed its answer and five counterclaims:  (1) declaratory judgment of priority; (2) unfair competition under 15 U.S.C. § 1125(a); (3) Minnesota common law trademark infringement; (4) Minnesota common law unfair competition; and (5) violation of the Minnesota Uniform Deceptive Trade Practices Act ("UDTPA").  (Doc. No. 51 at 16-20.) The parties now move for summary judgment on all claims.  (Doc. Nos. 95, 110.) Defendant also moves to strike the jury demand and to exclude the expert testimony of Theodore H. Davis, Jr.  (Doc. Nos. 83, 104.)

## DISCUSSION

Summary judgment is proper if the moving party shows that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  A party opposing a properly supported motion for summary judgment must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  "[A] genuine issue of material fact exists if:  (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).  The Court must view the evidence and the inferences that may be reasonably

4

drawn from the evidence in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).

## I.      Priority (Count 1 & Counterclaim 1)

The parties dispute who has priority to use the Trellis marks. They each request declaratory judgment on this issue. Plaintiff asks the Court to declare that Defendant cannot establish priority over Plaintiff, while Defendant asks the Court to declare that it has priority over Plaintiff. "The party who first uses a mark in commerce is said to have priority over other users." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015); *see also Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1427 (D. Minn. 1989) ("[R]ights in trademarks are not gained through discovery or invention of the mark, but only through actual use."). Under the Lanham Act, "use in commerce" is defined as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. For services, a mark is used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Id.* Use in commerce requires more than mere steps to establish a business. *Am. Ass'n for Just. v. Am. Trial Laws. Ass'n*, 698 F. Supp. 2d 1129, 1138 n.14 (D. Minn. 2010).[3]

---

[3]      The parties briefly discuss "analogous use," which is where certain pre-sales activity can be sufficient to establish priority and thus successfully oppose registration with the PTO. *See, e.g.*, *T.A.B. Sys. v. Pactel Teletrac*, 77 F.3d 1372, 1375 (Fed. Cir. 1996). The Court need not reach that issue because this case does not involve merely "pre-sales activity."

The parties' dispute boils down to whether Defendant's use of the Trellis mark before October 27, 2020 qualifies as "use in commerce" under the Lanham Act. On Plaintiff's first motion for summary judgment, the Court found a genuine issue of material fact on the issue of priority because there was enough evidence to show that Defendant may have used the Trellis mark in commerce. (Doc. No. 45 at 13.) For example, there was evidence of Trellis-branded clothing but no evidence that such clothing was used on or around August 12, 2020 by Defendant's employees in connection with its services. (*Id.* at 11.) Now, Defendants have provided significant additional evidence that addresses the Court's previous questions. After reviewing the new evidence, the Court finds that no reasonable factfinder could find that Defendant does not have priority in the Trellis mark.

There is significant evidence of use in commerce. First, Defendant used its Trellis mark on letters and notices sent to tenants in September and October of 2020. (Doc. No. 112-2.) Second, multiple employees confirmed that they were instructed to wear clothing with the Trellis mark while performing their job duties and that they followed this instruction. (Doc. No. 113 ¶¶ 11-12; Doc. No. 116 ¶ 6; Doc. No. 117 ¶ 6.) Third, Defendant created a new website with the Trellis mark, which went live on August 12, 2020. (Doc. No. 114 ¶ 6; Doc. No. 114-3; Doc. No. 119 ¶ 10; Doc. No. 119-1.) This website provided links to a list of Defendant's properties and a Rental Inquiries section. (Doc. No. 119-1 at 2, 4.) Fourth, new decals including Defendant's Trellis mark were applied to the office doors of Trellis Management on August 3, 2020. (Doc. No. 113-5; Doc. No. 114 ¶¶ 4, 5.) Current and prospective tenants met with Defendant's employees

6

in this office.  (Doc. No. 113 ¶ 17.)  Fifth, Defendant's employees gave new and

prospective tenants business cards and folders with Defendant's Trellis marks starting in

August 2020.  (Doc. No. 113 ¶ 13; Doc. No. 113-2 at 6-7.)  Lastly, Defendant's rent rolls

confirm that over seventy new tenants moved into units at Defendant's properties

between August 13, 2020 and October 26, 2020.  (*See* Doc. No. 120.)  Together, this

evidence shows that Defendant was using the Trellis mark in the sale or advertising of its

services, property management and development, prior to October 27, 2020.  Contrary to

what Plaintiff claims, this use went beyond "mere steps" to establish a property

management and development business.  Defendant was actually engaged in providing

these services and doing so while using the Trellis brand.

Plaintiff asserts that this evidence is insufficient to establish priority because

Defendant has not shown market penetration and that any prior use was "de minimis."

(Doc. No. 100 at 22.)  Plaintiff specifically relies on *Sweetarts v. Sunline, Inc.*, a case

where the Eighth Circuit considered market penetration when determining the geographic

scope of the injunction to be entered against the defendant.[4]  380 F.2d 923, 928-29 (8th

---

[4]    In its briefing, Plaintiff relied on legal standards as explained by Davis in his
expert report.  (*See* Doc. No. 100 at 17, 19-20.)  In the interest of fairness, the Court
reviewed the cases and standards in Davis's report but notes that an expert report should
not be used as a way around this District's word count limitations.  *See* D. Minn.
L.R. 7.1(f).  The Court regularly grants requests for enlargement of the word count
limitation, and indeed, granted one in this case to Defendant.  (*See* Doc. Nos. 97, 98.)
However, the Court's conclusion would be the same with or without Davis's report.

Relatedly, if the Court had reached Defendant's motion to strike Davis as an
expert, it would have granted the motion.  The fact that Plaintiff relies on Davis's report
for legal standards demonstrates the precise issue with his first opinion:  the "opinion"
usurps the role of the Court to say what the law is.  *See Am. Dairy Queen Corp. v. W.B.*

Cir. 1967). There, the plaintiff had principal markets in three states, significant sales in ten other states, and sporadic sales in twenty-two other states. *Id.* at 925. Thus, in crafting an injunction, the court looked at the plaintiff's activity in each of the states it made sales in to determine the geographic scope. *Id.* at 929. However, the court acknowledged that this kind of analysis was unnecessary "in the ordinary case of parties competing under the same mark in the same market." *Id.* at 928 (citation modified). In this case, two parties are using the same mark in the same market. Thus, the Court need not conduct a more detailed market penetration analysis. Moreover, Defendant has clarified that it only seeks to enjoin Plaintiff's use of its Trellis marks in Minnesota. (Doc. No. 136 at 4.)

In sum, the new evidence clarifies the Court's previous questions about Defendant's use of its Trellis marks in commerce. The Court finds that there is no genuine issue of material fact on the issue of priority. Defendant has established that it has priority over Plaintiff. Accordingly, the Court grants summary judgment in favor of Defendant on Count 1 and Counterclaim 1.

---

*Mason Co., Inc.*, 543 F. Supp. 3d 695, 732 (D. Minn. 2021) ("Generally, experts may not testify so as to invade the province of the court, testify to legal matters, or offer legal opinions couched as expert testimony."). His second opinion invades the province of the factfinder. *See Scobee v. USAA Cas. Ins. Co.*, 168 F.4th 507, 514-15 (8th Cir. 2026) ("Courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." (citation modified)).

## II.  Likelihood of Confusion (Count 2 & Counterclaims 2-5)

Having found that Defendant has priority over Plaintiff, the disposition of the remaining claims—declaratory judgment of non-infringement, unfair competition under 15 U.S.C. § 1125(a), common law trademark infringement, common law unfair competition, and violation of the UDTPA—come down to whether Plaintiff's use of its Trellis marks is likely to cause confusion.  *See First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996); *Am. Dairy Queen*, 543 F. Supp. 3d at 712; *Northland Ins. Cos. v. Blaylock*, 115 F. Supp. 2d 1108, 1117 (D. Minn. 2000) (listing the elements of Minnesota common law trademark infringement); *Mid-List Press v. Nora*, 275 F. Supp. 2d 997, 1003 (D. Minn. 2003) (explaining that claims under UDTPA are coextensive with claims under the Lanham Act).

Courts in the Eighth Circuit determine whether there is a likelihood of confusion by considering the six *SquirtCo*[5] factors:  (1) the strength of the owner's mark; (2) the similarity between the parties' marks; (3) the products' competitive proximity; (4) the alleged infringer's intent to pass off its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its cost, the conditions of purchase, and the degree of care to be exercised by potential customers of the trademark holder.  *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 933 (8th Cir. 2021).  No one factor controls and each factor's weight depends on the particular setting.  *Id.*  Evidence of actual confusion is strong proof of a likelihood of confusion.  *See Hubbard Feeds, Inc. v.*

---

5        *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir. 1980).

*Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999). "When identical marks are used in the same geographic area for the same class of goods or services, likelihood of confusion is presumed." *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1010 (8th Cir. 2011) (citation modified). After balancing these factors, the Court concludes that no reasonable factfinder could find that there is no likelihood of confusion between Plaintiff and Defendant's marks.

First, the Trellis mark is a strong mark. A trademark's strength is measured both conceptually and commercially. *Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1041 (D. Minn. 2015). To determine conceptual strength, courts must classify the mark into one of four categories: generic, descriptive, suggestive, or arbitrary or fanciful. *Id.* Plaintiff appears to concede that the Trellis mark is suggestive, and therefore conceptually strong. (*See* Doc. No. 123 at 27; Doc. No. 134 at 7.) The Court agrees and finds the Trellis mark is suggestive and inherently distinctive because the mark does not describe Defendant's services, rather, it suggests qualities like growth. *See First Bank*, 84 F.3d at 1045 n.5 ("A mark that suggests some quality or ingredient constitutes a suggestive trademark, which is entitled to trademark protection without proving secondary meaning.").

"Commercial strength is based on the public recognition and renown of the mark as shown by the amount of advertising, sales volume, features and reviews in publications, and survey evidence." *Zerorez*, 103 F. Supp. 3d at 1042 (citation modified). The commercial strength determination "is made at the time the mark is asserted in litigation." *Roederer v. J. Garcia Carrion, S.A.*, 732 F. Supp. 2d 836, 867 (D. Minn.

2010) (citation modified); *see also* 1 *McCarthy on Trademarks and Unfair Competition* § 11:80 (5th ed. 2026) ("The marketplace strength of the mark must be evaluated at the time of litigation or at the time registration is sought."). Plaintiff focuses on the seventy-six-day priority window once again to determine commercial strength. (Doc. No. 134 at 7.) That is the wrong timing for this determination. Defendant has shown significant evidence of commercial strength at the time of litigation, including numerous awards and other recognition, and a high volume of rental transactions due to its large volume of buildings and units. (*See* Doc. No. 119 ¶ 15; Doc. No. 119-3; Doc. No. 119-15.) Defendant's mark is also commercially strong. This factor weighs in Defendant's favor.

Second, the parties' word marks are identical. Plaintiff seems to dispute this factor on grounds that their services differ from Defendant's services. (Doc. No. 134 at 7.) The Court addresses that argument below. This factor weighs in Defendant's favor.

Third, the competitive proximity is close. This factor concerns the degree to which the two businesses' services compete with each other, which is determined by looking at the overlap in services, geographic proximity, customers, and trade channels. *See Zerorez*, 103 F. Supp. 3d at 1043; *Roederer*, 732 F. Supp. 2d at 868-69. Although the parties' services are not the same, there is some overlap. Plaintiff offers generally broader services, but those services do include housing related services for seniors. (*See, e.g.*, Doc. No. 121-6 at 9, 25-26; Doc. No. 121-14; Doc. No. 121-15.) Additionally, the parties operate exclusively within Minnesota, and primarily within the Minneapolis-St. Paul metro. Moreover, likelihood of confusion does not require that the parties' services directly compete with one another. Rather, the relevant question is whether the proximity

11

is such that the buying public thinks the services derive from the same source. *See Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 774 (8th Cir. 1994). This factor weighs in Defendant's favor.

Fourth, Plaintiff knew about Defendant's use of the Trellis mark, so intent can be inferred. "An inference of an intent to trade upon the [senior user's] good will arises if the [junior user], with knowledge of [senior user's] mark, chose a mark similar to that mark from the infinite number of possible marks." *Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1429 (D. Minn. 1989). While there is no direct evidence in the record that shows Plaintiff chose the name Trellis with intent to benefit from Defendant's good will, there is evidence that Plaintiff knew about Defendant's use of the Trellis mark before it filed its application to register and began using the mark itself. (*See* Doc. No. 121-6 at 24; Doc. No. 121-12 at 16; Doc. No. 121-18.) This evidence allows the Court to reasonably infer intent, but even without that inference, the other factors show a likelihood of confusion.

Fifth, there have been multiple incidents of actual confusion. Generally, courts look at the confusion of purchasers, but they may also consider the confusion of nonpurchasers. *First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D.*, 679 F.3d 763, 770 (8th Cir. 2012). Defendant provided several examples of confusion, including news articles that confused the two organizations and an incident where a Minneapolis City Council Member confused the two organizations. (*See* Doc. No. 119 ¶¶ 26, 28; Doc. No. 119-10; Doc. No. 119-12.) Plaintiff argues that none of these examples show actual confusion because they do not involve purchasers. (Doc. No. 126 at 23-25.) One

incident, at a minimum, could be considered actual confusion:  In August 2025, a third-party representing one of Defendant's tenants emailed Plaintiff's CEO seeking to resolve issues on behalf of that tenant, believing that Plaintiff owned the building where her client lived.  (Doc. No. 121-21.)  So, even without considering nonpurchaser confusion, this factor weighs in Defendant's favor.

Sixth, housing is an important service, but the parties serve communities that may exercise a lower degree of care, so this factor is neutral.  In addition, consumers exercising considerable care may still be confused where the parties use "identical or substantially similar marks while offering the same category of services in the same geographical location."  *Cmty. of Christ*, 634 F.3d at 1009.  The parties here do not offer the exact same services, but there is overlap and they use an identical mark.

Weighing these factors together, the Court concludes that no reasonable factfinder could find that there is no likelihood of confusion between Plaintiff and Defendant's marks.  There is no genuine dispute of material fact and Defendant is therefore entitled to judgment as a matter of law on Count 2 and Counterclaims 2 through 5.  Defendant's other motions are denied as moot.

## III.   Remedy

Because the Court found in favor of Defendant on its counterclaims, the Court now considers the proper remedy.  Defendant requested permanent injunctive relief and disgorgement of Plaintiff's profits.

### A.      Permanent Injunctive Relief

Before a court may grant permanent injunctive relief, the moving party must show that:  (1) it actually succeeded on the merits; (2) it faces irreparable harm; (3) the harm to it outweighs any possible harm to others; and (4) a permanent injunction serves the public interest.  *Cmty. of Christ*, 634 F.3d at 1012; *see also Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (noting that the standard for a permanent injunction is essentially the same as the one for a preliminary injunction, except that the moving party must have actual success on the merits).  "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity . . . ." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006).

Plaintiff argues that Defendant has not met the first factor, relying on its merits arguments that the Court addressed above.  (Doc. No. 126 at 28-29.)  Plaintiff appears to concede that Defendant has shown the second, third, and fourth factor.  (*See id.*)  Accordingly, now that Defendant has succeeded on the merits, the Court finds that permanent injunctive relief is an appropriate remedy.  Defendant only asks the Court to enjoin Plaintiff's use of the Trellis mark, and any variations of that mark, in the State of Minnesota.  Therefore, the Court permanently enjoins Plaintiff, and any person or entity associated with Plaintiff, from using the Trellis mark, or any variation thereof, in association with Plaintiff's services in Minnesota.

## B.    Disgorgement

Defendant requests disgorgement of Plaintiff's profits in addition to permanent injunctive relief.  Generally, injunctive relief is the preferred remedy to resolve trademark disputes, but the Lanham Act also allows disgorgement.  *See Masters v. UHS of Del., Inc.*, 631 F.3d 464, 471 (8th Cir. 2011) (citing 15 U.S.C. § 1117(a)).  "Courts have broad discretion to decide whether an injunction alone will be sufficient to do justice." *Wing Enters., Inc. v. Tricam Indus., Inc.*, 511 F. Supp. 3d 957, 978 (D. Minn. 2021) (citation modified).  A disgorgement award may be based on unjust enrichment, damages, or deterrence of a willful infringer.  *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir. 1994).

Defendant asserts that Plaintiff "has been unjustly enriched by its infringing conduct, and deterrence is warranted due to [Plaintiff's] adoption of an identical mark despite its express knowledge [Defendant]." (Doc. No. 12 at 47.)  After a review of the record, the Court finds that permanent injunctive relief is a sufficient remedy here and disgorgement is not warranted under the principles of equity.  While Plaintiff acted with knowledge, it is not clear that Plaintiff was unjustly enriched.  Additionally, permanent injunctive relief is a sufficient deterrent in this situation.  Lastly, both organizations are nonprofits that do important work in this community.  Disgorgement could harm Plaintiff and limit its ability to continue its important work.  That is not in the best interest of the public.  Defendant's request for disgorgement of Plaintiff's profits is denied.

15

**ORDER**

Based upon the foregoing and the record in this case, **IT IS HEREBY**

**ORDERED** that:

1.     Defendant/Counter Claimant Trellis Co.'s motion for summary judgment

(Doc. No. [110]) is **GRANTED**.

2.     The Court **DECLARES** that Defendant/Counter Claimant Trellis Co. has

priority of use of the Trellis mark over Plaintiff/Counter Defendant Metropolitan Area

Agency on Aging, Inc.

3.     Plaintiff/Counter Defendant Metropolitan Area Agency on Aging, Inc. and

its principals, officers, directors, shareholders, partners, agents, servants, employees,

parents, subsidiaries, and affiliates, and all persons or entities acting in concert or

participation with any of them, are **PERMANENTLY ENJOINED** from using the

infringing Trellis mark or any similar variations thereof, alone or in combination with any

other word(s) or design(s), in connection with Plaintiff/Counter Defendant's services in

the State of Minnesota.

4.     Defendant/Counter Claimant Trellis Co.'s request for disgorgement of

profits is **DENIED**.

5.     Plaintiff/Counter Defendant Metropolitan Area Agency on Aging, Inc.'s

claims (Doc. No. [1]) are **DISMISSED WITH PREJUDICE**.

6.     Plaintiff/Counter Defendant Metropolitan Area Agency on Aging, Inc.'s

second motion for summary judgment (Doc. No. [95]) is **DENIED**.

7.      Defendant/Counter Claimant Trellis Co.'s motion for bench trial and to strike the jury demand (Doc. No. [83]) is **DENIED AS MOOT**.

8.      Defendant/Counter Claimant Trellis Co.'s motion to exclude the expert testimony of Theodore H. Davis, Jr. (Doc. No. [104]) is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 2, 2026.                              s/Donovan W. Frank
                                                   DONOVAN W. FRANK
                                                   United States District Judge